**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **BRENT LEWIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 20-cv-3330** |
| | ) | |
| **ILLINOIS CENTRAL** | ) | |
| **RAILROAD COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>OPINION AND ORDER</u>

**SUE E. MYERSCOUGH, U.S. District Judge.**

Plaintiff Brent Lewis is a retired employee of Defendant Illinois Central Railroad Company (the "Railroad"). In December 2017, Mr. Lewis suffered several injuries to his right foot and ankle. Three years later, Mr. Lewis sued Illinois Central under the Federal Employers' Liability Act, 45 U.S.C. §§ 51 <u>et seq.</u> Mr. Lewis alleges that his injuries were caused by Illinois Central's negligence.

This matter comes before the Court on Illinois Central's motions to bar two of Mr. Lewis's experts from testifying at trial; Mr. Lewis's motions to bar the affidavit of a non-testifying expert and to compel an inspection of four of Illinois Central's railyards;

and three motions for summary judgment filed by Illinois Central. For the reasons that follow, Illinois Central's motions are DENIED and Mr. Lewis's motions are GRANTED.

## I. BACKGROUND

### A.    Facts

The Court draws these facts from the parties' statements of undisputed facts and the evidence they submitted.  The Court deems admitted those facts not in dispute or disputed without an evidentiary basis.  See L.R. 7.1(D)(2)(b)(2).

Plaintiff Brent Lewis is a retired railroad worker.  Defendant Illinois Central Railroad Company is an interstate rail carrier and, since 1998, a subsidiary of Canadian National Railway.  Mr. Lewis joined Illinois Central in 1976.  He worked variously as a trainman, a brakeman, and a flagman.  In 1987, Mr. Lewis left Illinois Central's employment for a series of sales and office jobs.

Mr. Lewis resumed his railroad work in 2003 as a conductor for Norfolk Southern.  Among other duties, Mr. Lewis was required

to ride on the sides of railcars, jump on and off moving trains, and walk on variably sized ballast.[1]

In 2008, Mr. Lewis returned to Illinois Central. The Railroad assigned Mr. Lewis to its Champaign, Decatur, Effingham, and Mattoon railyards. Although Mr. Lewis was hired as a "conductor," his work for Illinois Central, much like his work for Norfolk Southern, involved an assortment of roles and tasks. See generally B. Lewis Dep., d/e 24-1, at 31:8–16 ("Q: . . . the different jobs you worked were many and varied, correct? A: Absolutely. Q: Okay. And that would include yard work, roadwork, switching work, whatever—whatever was there? A: Yes, sir."). Among other duties, Mr. Lewis switched boxcars, walked in railyards and along railroad tracks, climbed on and off railcars, threw switches, and disassembled and assembled trains. The physical demands of Mr. Lewis's work varied accordingly. As a conductor, he might walk "very little." Id. at 67:18–20. But when Mr. Lewis worked as a road

---

[1] Ballast "is the gravel or crushed rock that is used to construct one or more layers above the subgrade to support the railroad track or provide drainage." Kelly v. Illinois Cent. R.R. Co., No. 08-cv-1052, 2010 WL 271959, at *5 (C.D. Ill. Jan. 12, 2010), on reconsideration in part sub nom. Kelly v. Illinois Cent. R.R. Co., No. 08-cv-1052, 2010 WL 11552954 (C.D. Ill. Feb. 8, 2010).

switcher or a brakeman, he could walk five miles or more during a single shift.

In 2004, around a year into his tenure with Norfolk Southern, Mr. Lewis began experiencing pain "on and off" in both of his heels. Nearly a decade passed before Mr. Lewis sought medical treatment. In March 2014, after Mr. Lewis complained of continuous pain in his left foot, his primary care physician referred him to Dr. Sarah Spizzirri, a podiatric surgeon. After examining Mr. Lewis, Dr. Spizzirri diagnosed him with plantar fasciitis and "sharp foot pain" in both feet, noting that the latter was "worse with increased activities and activity after rest." See Def.'s Mot. ex. L, d/e 28-14, at 11 ("Weaver Report"). Dr. Spizzirri later completed an FMLA leave form on Mr. Lewis's behalf, certifying that Mr. Lewis's condition required occasional medical leave between March 2014 and March 2015. Dr. Spizzirri provided a second certification of Mr. Lewis's medical-leave status in February 2016.

Mr. Lewis returned to Dr. Spizzirri for annual plantar fasciitis examinations in February 2015, February 2016, and February 2017. Each time, Dr. Spizzirri largely attended to Mr. Lewis's left foot, which had by 2017 developed a heel spur. Each time, Mr.

Lewis reported that his railroad work required him to walk on uneven surfaces and that walking on uneven surfaces increased his level of pain in both feet. And each time, Mr. Lewis denied any swelling, burning, or tingling in either foot.

Mr. Lewis worked his final shift for Illinois Central sometime around December 15, 2017.[2] Mr. Lewis later estimated that he "had to walk five or six miles that night," though he recalled nothing else out of the ordinary about his shift. B. Lewis Dep., d/e 24-1, at 73:4–5. When Mr. Lewis awoke the next morning, however, his right foot felt as if it were "on fire," leaving him "barely [able to] get out of bed." Id. at 72:14–17; see also id. at 107:19–22 ("A: I had never felt any pain in my foot – feet, like that, ever. It was a burning sensation, like my foot was on fire. It was tender. I couldn't walk. It was -- it was numb.").

Dr. Spizzirri examined Mr. Lewis three days later. Mr. Lewis reported experiencing acute pain and a continuous burning

---

[2] The record is unclear on the date of Mr. Lewis's last shift. Nonetheless, the parties seem not to dispute that Mr. Lewis suffered and discovered at least two of his alleged injuries—right-foot tarsal tunnel syndrome and right gastrocnemius equinus—within the applicable statute of limitations.

sensation in his right heel.  Dr. Spizzirri ordered an MRI and subsequently diagnosed Mr. Lewis with right-foot tarsal tunnel syndrome, gastrocnemius equinus, and a plantar fascial injury. Mr. Lewis underwent surgery the following March.  Dr. Spizzirri repaired a tear in Mr. Lewis's right plantar fascia, released his entrapped right tarsal tunnel, and performed a right gastrocnemius muscle recession.  Mr. Lewis has not since returned to work.

## B.    Procedural History

On December 15, 2020, Mr. Lewis brought this suit pursuant to 45 U.S.C. §§ 51 et seq.  Compl., d/e 1.  Mr. Lewis alleges that his injuries were caused by Illinois Central's failure to exercise ordinary care "with regard to the tracks, ballast[,] and walking and working conditions Plaintiff was required to work at and with Defendant." Id. ¶ 7.  He seeks to recover lost wages, medical expenses, and for physical and emotional pain and suffering.

## II. JURISDICTION AND VENUE

Mr. Lewis brought this action pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 et seq.  This Court, therefore, has federal-question jurisdiction over his claims.  See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of

all civil actions arising under the Constitution, laws, or treaties of the United States.").  The Court also has jurisdiction pursuant to 28 U.S.C. § 1337(a) because Mr. Lewis's claims arise under an act of Congress regulating commerce.  Venue is proper because "a substantial part of the events or omissions giving rise" to Mr. Lewis's claims occurred in this District.  28 U.S.C. § 1391(b).

### III. LEGAL STANDARD

Summary judgment is proper if the movant shows that no genuine dispute exists as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial responsibility of informing the Court of the basis for the motion and identifying the evidence the movant believes demonstrates the lack of any genuine dispute of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine dispute of material fact exists if a reasonable trier of fact could find for the nonmoving party.  Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012).  At summary judgment, the Court construes all facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  Woodruff v. Mason, 542 F.3d 545, 550 (7th Cir. 2008).

## IV. DISCUSSION

At issue is a single claim brought under the Federal Employers Liability Act (FELA), which "affords redress to injured employees of railroad companies that are engaged in interstate commerce." Sweatt v. Union Pac. R. Co., 796 F.3d 701, 707 (7th Cir. 2015) (citing 45 U.S.C. §§ 51 et seq.). "Cognizant of the physical dangers of railroading that resulted in the death or maiming of thousands of workers every year," Congress devised the FELA as "a federal remedy that shifted part of the human overhead of doing business from employees to their employers." Consol. Rail Corp. v. Gottshall, 512 U.S. 532, 542 (1994). The FELA does not impose strict liability on employers or establish a federal system of workers' compensation. Rather, the FELA "requires a plaintiff to prove all the elements of a [common-law] negligence claim against his employer . . . judged according to a relaxed standard of causation whereby a plaintiff must prove only that the employer's negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Brown v. Burlington N. Santa Fe Ry. Co., 765 F.3d 765, 771 (7th Cir. 2014) (cleaned up).

Illinois Central concurrently moves for partial and full summary judgment. To survive, Mr. Lewis "must demonstrate that a question of fact exists concerning whether [his] employer's negligence played a part, however slight, in [his] injuries." Strickland v. Norfolk S. Ry. Co., 692 F.3d 1151, 1157 (11th Cir. 2012) (citing Rogers v. Missouri Pac. R.R. Co., 352 U.S. 500, 505–07 (1957)). This Court "must submit an [FELA] case to the jury when there is even slight evidence of negligence." Harbin v. Burlington N. R.R. Co., 921 F.2d 129, 131 (7th Cir. 1990).

The Railroad also seeks to bar the opinions offered by Mr. Lewis's treating physician and his ergonomics expert. In turn, Mr. Lewis moves to exclude an affidavit submitted by the author of a study cited by Mr. Lewis's ergonomics expert. Mr. Lewis further moves to compel an inspection and collection of ballast samples in the four railyards in which he worked.

**A. Illinois Central's Motion to Bar the Expert Testimony of Dr. Tyler Kress is Denied.**

The Court begins with the parties' evidentiary motions. Illinois Central first moves to bar the expert testimony of Dr. Tyler Kress, Mr. Lewis's ergonomics expert. See Def.'s Mot., d/e 28. Dr. Kress

holds a Ph.D. in industrial engineering from the University of
Tennessee and previously directed that university's Engineering
Institute for Trauma and Injury Prevention. <u>See</u> Pl.'s Resp. ex. 2,
d/e 35-3, at 1–2. He is expected to opine that Illinois Central's
failure to provide reasonably safe working conditions caused Mr.
Lewis's injuries. Def.'s Mot. ex. A, d/e 28-3, at 2. Specifically, Dr.
Kress is expected to testify that "[c]limbing and walking on larger
ballast," among other contributing factors, "imparted stresses to
Mr. Lewis' body which understandably contributed to wear-and-tear
and injury to his musculoskeletal system." Def.'s Mot. ex. B, d/e
28-4, at 7 ("Kress Report"). Relying on its own expert's competing
opinions, Illinois Central argues that Dr. Kress's testimony is
methodologically unsound. The Court disagrees.

A motion to exclude expert testimony "is governed by Federal
Rules of Evidence 702 and 703, as construed by the Supreme Court
in <u>Daubert</u>." <u>Brown</u>, 765 F.3d at 771 (citing <u>Daubert v. Merrell Dow
Pharms., Inc.</u>, 509 U.S. 579 (1993)). <u>Daubert</u> and Rule 702 require
that expert testimony be both "reliable" and "relevant." <u>Timm v.
Goodyear Dunlop Tires N. Am., Ltd.</u>, 932 F.3d 986, 993 (7th Cir.
2019). In deciding whether to admit or exclude expert testimony,

this Court must examine (1) whether the witness is qualified as an expert, (2) whether the expert's methodology is scientifically reliable, and (3) whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue.  <u>Myers v. Illinois Cent. R.R. Co.</u>, 629 F.3d 639, 644 (7th Cir. 2010).  The party introducing expert testimony must establish the admissibility of each opinion by a preponderance of the evidence.  <u>See</u> <u>Varlen Corp. v. Liberty Mut. Ins. Co.</u>, 924 F.3d 456, 459 (7th Cir. 2019).

Illinois Central does not challenge Dr. Kress's qualifications. Rather, Illinois Central challenges the methodological underpinnings of Dr. Kress's opinions.  The Railroad contends that he reached his conclusions without "cit[ing] any factual or scientific support for his opinions that is relevant to the workplaces at issue here."  Def.'s Mot., d/e 28-2, at 23.  The Railroad further contends that Dr. Kress "has done nothing to compare any quantifiable facts regarding Plaintiff's workplaces" to those examined in the studies relied upon in his report.  <u>Id.</u>  In sum, Illinois Central argues,

> Kress does not know the requisite details of Plaintiff's work conditions to allow him to give his opinions to the jury. He has not provided any record of any measurements or quantification of the purported risk factors in

Plaintiff's work sites. Kress did not cite or testify as to the duration or frequency of the Plaintiff's work tasks which are criticized in his report—he has never talked to Plaintiff, and thus could not have asked about these details. He has not cited or testified as to any calculations or replicable analyses, which necessarily precludes any other expert from testing his conclusions. Kress has not provided evidence of any dose-response relationship regarding a safe or unsafe level of "ergonomic risks." He has not provided data on the forces necessary to cause the alleged injuries (general causation). He has not executed his methodology consistent with the methodologies approved in his field. Despite this lack of any factual foundation or scientific method, Kress has opined that there were risk factors present in Plaintiff's work that are consistent with the alleged injuries.

Id. d/e 113-5, at 76:16–77:6.

Mr. Lewis disputes this characterization of Dr. Kress's expected testimony. He contends that Dr. Kress's inability to cite or conduct an "epidemiological study establishing quantified dose-response relationships for the specific activities Plaintiff performed" cannot provide grounds for excluding his testimony. Pl.'s Resp., d/e 35-1, at 14. According to Mr. Lewis, Dr. Kress "relied in part on an extensive body of literature . . . regarding the kind of workplace [risk] factors to which Plaintiff was exposed during his employment

with Defendant," including studies and publications addressing "the risks of musculoskeletal disorders and cumulative trauma to the right foot-lower extremity associated with the railroad working environment." Id. at 12. Indeed, Mr. Lewis argues that Dr. Kress's review was considerably more comprehensive than Illinois Central argues it was:

> Dr. Kress reviewed Plaintiff's deposition testimony to obtain information regarding the daily work tasks Plaintiff performed and the work environment he was subjected to on a daily basis over his railroad career. He has obtained characterizations of these tasks and the frequency with which conductors perform these tasks from speaking with other employees of the Defendant in several other cases. He reviewed the IC work and safety rules. He has personally seen and observed these tasks being performed. He has personally climbed on and off of cars and has thrown switches during inspections on railroad property. He has data associated with switches, handbrakes and air hoses he has measured in the past and has seen documented in the literature. It is undisputed he does not have measurements of forces for the specific equipment Plaintiff put his hands on and worked with on IC's property but given these bases of information, Dr. Kress' knowledge of the details of Plaintiff's work is not, as Defendant would have this Court believe, based simply on his own "speculation."

Id. at 16.

"An expert's opinion must be reasoned and founded on data." Bielskis v. Louisville Ladder, Inc., 663 F.3d 887, 894 (7th Cir. 2011).  An expert's opinion "must also utilize the methods of the relevant discipline."  Id.  But in conducting a Daubert inquiry, this Court does not "take the place of the jury to decide ultimate issues of credibility and accuracy."  Lapsley v. Xtek, Inc., 689 F.3d 802, 805 (7th Cir. 2012).  This means that expert testimony "based on a valid and properly applied methodology" is admissible "even if the expert reaches a conclusion that is subject to doubt."  In re Zimmer Nexgen Knee Implant Prod. Liab. Litig., 218 F. Supp. 3d 700, 713 (N.D. Ill. 2016), aff'd sub nom. in re Zimmer, NexGen Knee Implant Prod. Liab. Litig., 884 F.3d 746 (7th Cir. 2018).

None of the grounds offered by Illinois Central warrant excluding Dr. Kress's testimony.  Little in the record distinguishes the methodology used by Dr. Kress from that employed by Illinois Central's expert, Brian Weaver.  In his report, Mr. Weaver observed that a biomechanics and ergonomics expert should "rely on medical records to obtain information regarding clinical diagnoses . . . [and] on engineering and physics training to understand the mechanics of the specific event that created the injuries."  Weaver Report, d/e

28-14, at 10.  Dr. Kress satisfied those requirements.  <u>See</u> Kress
Report, d/e 28-4, at 3–6 (citing, among other sources, medical
records, ergonomics standards, and engineering training and
experience).

The Railroad also contends that Dr. Kress faltered in not
conducting his own dose-response study or providing "a peer
reviewed scientific article that links Mr. Lewis' activities with the IC
and his diagnosed conditions." <u>See</u> Weaver Report, d/e 28-14, at
18.  But in "cumulative injury cases, such as this, where injuries
manifest themselves over many years of employment, it would be
almost impossible for a plaintiff to ever produce expert testimony
based on conducting the kind of strict, case-specific quantitative
analysis demanded by Defendant." <u>Kelly v. Illinois Cent. R.R. Co.</u>,
No. 08-1052, 2010 WL 11552954, at *6 (C.D. Ill. Feb. 8, 2010)
(Mihm, J.) (declining to reconsider denial of Illinois Central's motion
to exclude Dr. Kress's testimony).  Accepting this argument would
require the Court to exclude Mr. Weaver's testimony as equally
methodologically unsound.  <u>See</u> Pl.'s Resp., d/e 35-1, at 12 n.4.
Simply put, "it makes little sense to require a plaintiff to establish a
dose/response relationship or threshold level in a situation where

there has been no scientific study conducted specifically on railroad brakemen and where the dose/response relationship or threshold level will always vary from individual to individual." <u>Hardyman v. Norfolk & Western Ry. Co.</u>, 243 F.3d 255, 265 (6th Cir. 2001).

Lastly, Illinois Central directs the Court's attention to other courts' decisions to exclude Dr. Kress's expert testimony. Faced with the same argument in another cumulative-injury suit involving Illinois Central, Judge Mihm aptly noted:

> [It is not persuasive] that another judge considering a motion attacking Kress' testimony in another case against the same Defendant reached a different result. Judge McCuskey reached his decision based on consideration of the facts and evidence in his case, and this Court did the same based on the facts and evidence in this case. As the Court has previously stated, each case must be resolved on its own facts, and as a result, it would be inappropriate to impose the kind of blanket ban on Kress' testimony sought in this case. The Court does not believe that <u>Daubert's</u> requirements were intended to be applied in such an inflexible manner under the circumstances.

<u>Kelly</u>, 2010 WL 11552954, at *5. This Court agrees.

In the end, the Railroad's quarrel appears to lie with the substance of Dr. Kress's opinions. The proper method of contesting

those opinions is "to cross-examine vigorously, to present contrary evidence, and to give careful instructions on the burden of proof." Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1021 (7th Cir. 2000). Illinois Central's motion to exclude is denied.

## B. Mr. Lewis's Motion to Bar the Affidavit of William Barbre is Granted.

Dr. Kress cites a 1992 study conducted by Burlington Northern, one of the Railroad's competitors. The study compared the "body forces for getting on and off moving rail equipment" to "those created by ladder-transmitted impact . . . as experienced during abrupt stops and other movement situations." Def.'s Resp. ex. 2, d/e 34-1, at 36. Illinois Central seeks to impeach Dr. Kress's use of the study with an affidavit from William Barbre, the study's author. See Barbre Aff., Def.'s Resp. ex. 1, d/e 34-1. In sum, the affidavit attests that Dr. Kress's interpretation of Mr. Barbre's study is wrong. Illinois Central did not disclose Mr. Barbre as an expert.

Mr. Lewis now moves to exclude the affidavit, characterizing it as undisclosed expert testimony and arguing that its admission would be highly prejudicial. Pl.'s Mot., d/e 31, at 1–2. Illinois Central responds—without citation or substantiation—that there

"are no opinions in Barbre's affidavit, only facts," and that his affidavit "does not apply any scientific methodology." Def.'s Resp., d/e 34, at 5; but see Barbre Aff., d/e 34-1, at 2 (attesting that Dr. Kress's citation was "improper and not scientifically reliable").

"Often evidence inadmissible for some other purpose may be admissible as impeachment evidence." Bryan v. John Bean Div. of FMC Corp., 566 F.2d 541, 546 (5th Cir. 1978). At the same time, however, "impeachment should not be used 'as a mere subterfuge to get before the jury evidence not otherwise admissible.'" Taylor v. Nat'l R.R. Passenger Corp., 920 F.2d 1372, 1376 (7th Cir. 1990) (quoting United States v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984)). The Court can find no authority suggesting that the affidavit of an undisclosed, non-testifying expert can be used to impeach an opinion offered by an opposing expert. On the contrary, "to admit the hearsay opinion of an expert not subject to cross-examination goes against the natural reticence of courts to permit expert opinion unless the expert has been qualified before the jury to render an opinion." Id. Mr. Lewis's motion is granted.

**C. Illinois Central's Motion to Bar the Medical Causation Opinions of Dr. Sarah Spizzirri is Denied.**

Illinois Central next moves to bar any expert testimony from Dr. Sarah Spizzirri, Mr. Lewis's treating podiatrist.  See Def.'s Mot., d/e 30.  Dr. Spizzirri is expected to testify that "the repetitive motions of activity on uneven surfaces, stairs, ladders, climbing" served as a "causative agent for [Mr. Lewis's] tarsal tunnel syndrome."  S. Spizzirri Dep., Def.'s Mot. ex. B, d/e 30-4, at 12:22–13:8.  The Railroad says that Dr. Spizzirri's specific-causation opinions—the only such opinions offered by Mr. Lewis—do not pass muster under Federal Rule of Evidence 702 or Daubert.  Again, the Court concludes otherwise.

A treating physician is "not distinguish[ed] . . . from other experts when the treating physician is offering expert testimony regarding causation."  O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) (citation omitted).  This Court must examine (1) whether Dr. Spizzirri is qualified as an expert, (2) whether her methodology is scientifically reliable, and (3) whether her testimony will assist the trier of fact.  Myers, 629 F.3d at 644.

Dr. Spizzirri is a board-certified podiatric surgeon.  Dr. Spizzirri also served as Mr. Lewis's primary treating podiatrist throughout the relevant period.  As with Dr. Kress, Illinois Central does not contest the adequacy of those credentials.  Illinois Central instead challenges the reliability of Dr. Spizzirri's "data" and her diagnostic methodology.

Illinois Central first argues that Dr. Spizzirri erred in relying on Mr. Lewis's self-reporting of his lifestyle and job duties and on her own experience in treating Mr. Lewis and other podiatric patients.  This argument, however, fails to consider Dr. Spizzirri's role here—as a treating physician, not a retained expert.  "In order to properly treat and diagnose a patient, the doctor needs to know, establish, or reach a conclusion regarding the cause of the patient's injury." McCloughan v. City of Springfield, 208 F.R.D. 236, 242 (C.D. Ill. 2002) (Mills, J.).  In so doing, "[m]edical professionals reasonably may be expected to rely on self-reported patient histories." Walker v. Soo Line R.R. Co., 208 F.3d 581, 586 (7th Cir. 2000) (citing Cooper, 211 F.3d at 1019–21 (7th Cir. 2000)).  Here, Dr. Spizzirri applied her expertise and her personal knowledge of Mr. Lewis in evaluating potential causes, reaching a diagnosis, and

devising a course of treatment.  As Mr. Lewis correctly argues, Dr.
Spizzirri accounted for Mr. Lewis's "physical exam, x-rays, MRI[,]
and his known work activities on the railroad" in determining that
Mr. Lewis's work contributed to his injuries.  All this data was
permissible, reliable, and adequate.

Illinois Central also contends that Dr. Spizzirri cannot testify
to specific causation without testifying to a differential diagnosis or
etiology.  Moreover, the Railroad says, Dr. Spizzirri cannot offer a
specific-causation opinion without having gone well beyond her
obligations as a treating physician.  According to Illinois Central,
"[t]he doctor must still perform independent studies (including
ruling in all other potential causes based on patient-specific facts),
review research, present a methodology by which the conclusion
can be scientifically and objectively tested, and consider the level of
exposure necessary for causation."  Def.'s Reply, d/e 45, at 6.

"In deciding whether an expert employed a reliable method,"
this Court has the "discretion to consider whether 'the expert has
adequately accounted for obvious alternative explanations.'"
Brown, 765 F.3d at 773 (quoting Fed. R. Evid. 702 committee note
(2000)).  At the same time, an expert "need not testify with complete

certainty about the cause of an injury; rather he may testify that one factor could have been a contributing factor to a given outcome." Gayton v. McCoy, 593 F.3d 610, 619 (7th Cir. 2010).

"Differential diagnosis," by which a physician rules in or out a medical condition based on the presence or absence of certain identifying markers, "is an accepted and valid methodology for an expert to render an opinion about the identity of a specific ailment." Myers, 629 F.3d at 644. "Differential etiology" involves the use of similar methods to determine "the cause, not just the identity, of an ailment." Brown, 765 F.3d at 772. Both Dr. Spizzirri's diagnosis and her causation testimony "adequately accounted" for Mr. Lewis's lifestyle—including his apparent lack of physically taxing hobbies— and his job duties in considering and disposing of "obvious alternative explanations." Brown, 765 F.3d at 773. In other words, Dr. Spizzirri conducted a prototypical differential diagnosis and etiology. See Dohse v. Norfolk S. Ry. Co., No. 2:11-CV-099 JD, 2013 WL 12318275, at *8 (N.D. Ind. Dec. 19, 2013) ("It is not necessary for an expert to actually invoke the phrase differential etiology in order to analyze it under that framework, so long as the record reflects that the methodology was in fact performed."). There

is "nothing controversial about that methodology." <u>Myers</u>, 629 F.3d at 644 (citations omitted).  Moreover, Dr. Spizzirri, like Dr. Kress, cannot be faulted for failing to perform the kind of highly technical dose-response testing that only Illinois Central was equipped to perform.   On this record, the Court must conclude that Dr. Spizzirri's diagnostic methodology and, therefore, her methodology in reaching a specific-causation opinion were sound.  Illinois Central's motion to exclude Dr. Spizzirri's testimony is denied.

## D. Illinois Central's Motion for Partial Summary Judgment on the Statute of Limitations is Denied.

Illinois Central moves for partial summary judgment on Mr. Lewis's claim of an injured right plantar fascia.  Def.'s Mot. Partial Summ. J., d/e 21.  The Railroad contends that the FELA's repose statute bars Mr. Lewis from recovering for plantar fasciitis, a condition first diagnosed in March 2014.  <u>See</u> Def.'s Mem., d/e 22, at 1–2.  Yet a reasonable jury could find that Mr. Lewis suffered a discrete injury to his right plantar fascia no earlier than December 15, 2017.  Because accepting Illinois Central's timeline and its characterization of the relevant injury would require this Court to

construe the record in the Railroad's favor, Illinois Central's motion must be denied.

Under the FELA, "no action shall be maintained under this [A]ct unless commenced within three (3) years from the day the cause of action accrued." 45 U.S.C. § 56. An FELA claim accrues "when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." Green v. CSX Transp., Inc., 414 F.3d 758, 763 (7th Cir. 2005) (citing Tolston v. Nat'l R.R. Passenger Corp., 102 F.3d 863, 865 (7th Cir. 1996); Fries v. Chicago & Northwestern Transp. Co., 909 F.2d 1092, 1095 (7th Cir. 1990)). "When the specific date of injury cannot be determined because an injury results from continual exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself." Id. (citing Fries, 909 F.2d at 1094; Urie v. Thompson, 337 U.S. 163 (1949)).

"Accrual is defined in two parts: notice of injury and notice of cause." Sweatt, 796 F.3d at 707 (citation omitted). The inquiry here, then, is twofold. The first part asks when Mr. Lewis knew—or, with reasonable diligence, had reason to know—that he had

suffered something more than a de minimis plantar fascia injury in his right foot.  See Green, 414 F.3d at 764–65; see also Lancaster v. Norfolk & Western Ry. Co., 773 F.2d 807, 821 (7th Cir. 1985), cert. denied, 480 U.S. 945 (1987).  The second asks when Mr. Lewis knew or had reason to know that his injury stemmed from his work. The record cannot sustain the Railroad's request for partial summary judgment on either question.

According to Illinois Central, no reasonable jury could find that Mr. Lewis failed to discover that his right-foot plantar fasciitis was more than de minimis until December 2017.  According to Mr. Lewis, however, the record instead "supports a finding that it was not until after December 18, 2017[,] that Mr. Lewis' symptoms escalated beyond 'inconsequential manifestations' so as to put him on notice that he sustained actual injuries causally related to his railroad employment."  Pl.'s Resp., d/e 41, at 14.  Before then, Mr. Lewis argues, he "was working every day for the railroad, had no appreciable damages (i.e.[,] wage loss), and had no reason to know that he sustained right plantar fasciitis injuries which eventually [required] surgical intervention."  Id. at 13.

The Court agrees with Mr. Lewis. Illinois Central's argument confuses the <u>plantar fascia</u>, the ligament connecting the foot's front to its heel, for <u>plantar fasciitis</u>, an inflammation of the tissue surrounding that ligament. The record reflects that Mr. Lewis long suffered from the latter but only sustained the former in December 2017. Along with the deposition testimony provided by Mr. Lewis and Dr. Spizzirri, the record contains two FMLA leave forms in which Dr. Spizzirri certified that Mr. Lewis was "being treated for a right plantar fascia tear" beginning on December 18, 2017. Pl.'s Resp. ex. 5, d/e 36-5, at 2; <u>id.</u> ex. 6, d/e 36-6, at 2. The record also contains FMLA leave forms from 2014 and 2016 certifying that Mr. Lewis suffered from bilateral "plantar fasciitis," <u>see id.</u> ex. 3, d/e 36-3, at 7, and "plantar fascial fibromatosis," <u>see id.</u> at 2. Construing that record and drawing all reasonable inferences in Mr. Lewis's favor, a jury readily could conclude that Mr. Lewis did not merely exacerbate his preexisting plantar fasciitis but <u>tore</u> his plantar fascia, and that he did so within the statute of limitations.

Consider the following example. An office worker suffers from a decade-old bulging disc. The condition may or may not be related to his work—which primarily involves sitting—but regardless of the

cause, the condition is generally manageable.  One day, the office worker's desk chair collapses under him, fracturing his bulging disc in the process.  His attempt to recover for an acute injury would not be time-barred just because he knew of an underlying, arguably de minimis, and ultimately distinct chronic condition.  See generally Fonseca v. Consol. Rail Corp., 246 F.3d 585, 590 (6th Cir. 2001) ("For Fonseca's claim to survive the FELA statute of limitations, he must establish that the frequent but temporary pain he experienced for 27 years was distinct from the cumulative injury that resulted in continuous discomfort thereafter.").  With the record construed in his favor, Mr. Lewis's claim is functionally no different.

To be sure, a plaintiff "cannot wait until he receives a medical diagnosis to begin pursuit of his claim."  Sweatt, 796 F.3d at 708 (citing Fries, 909 F.2d at 1095).  Yet "intermittent pain associated with a minor injury" is, by the same token, "insufficient to trigger accrual of a claim under the FELA."  Sweatt, 796 F.3d at 708 (citing Green, 414 F.3d at 764)).  At the very least, Mr. Lewis's allegations here fall somewhere between those ends of the cause-accrual spectrum.  He is "entitled to have a jury decide whether and when a reasonable person in his circumstances would have realized that he

had suffered more than a de minimis cumulative injury [to his right plantar fascia] and that the injury was work-related." <u>Green</u>, 414 F.3d at 764–65.

### E. Illinois Central's Motion for Summary Judgment on Causation is Denied.

Next, Illinois Central moves for summary judgment on the question of causation. Def.'s Mot. Summ. J., d/e 23. Illinois Central argues that summary judgment is warranted because Mr. Lewis "has not produced an admissible expert opinion establishing specific medical causation, which is required to sustain an FELA claim." <u>See</u> Def.'s Mem., d/e 24, at 1. Put differently, Illinois Central argues that summary judgment in its favor necessarily follows from a ruling that Dr. Spizzirri's specific-causation testimony is inadmissible. The Court, however, has found Dr. Spizzirri's testimony admissible.

The FELA "imposes on railroads a general duty to provide a safe workplace." <u>McGinn v. Burlington N. R.R. Co.</u>, 102 F.3d 295, 300 (7th Cir. 1996). In keeping with the act's "broad remedial" purpose, <u>see</u> <u>Atchison, Topeka & Santa Fe. Ry. Co. v. Buell</u>, 480 U.S. 557, 461 (1987), the burden of proof in a FELA negligence case

is lower than the burden imposed in an action for common-law negligence.  See Lisek v. Norfolk & W. Ry. Co., 80 F.3d 823, 832 (7th Cir. 1994).  "The railroad is liable if the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury."  Id. (quoting Harbin v. Burlington N. R.R. Co., 921 F.2d 129, 131 (7th Cir. 1990)) (cleaned up); see also CSX Transp., Inc. v. McBride, 564 U.S. 685, 688 (2011) ("[A] defendant railroad caused or contributed to a plaintiff employee's injury if the railroad's negligence played any part in bringing about the injury.").  Therefore, to survive summary judgment, an FELA plaintiff must provide "more than a scintilla of evidence" of the railroad's negligence, "but not much more." Aparicio v. Norfolk & Western Ry. Co., 84 F.3d 803, 810 (6th Cir. 1996), abrogated in part on other grounds by Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149–50 (2000).

Illinois Central correctly states the applicable law.  As the Seventh Circuit has recognized, cumulative injuries can be caused by "myriad . . . factors, none of which is obvious or certain."  Myers, 629 F.3d at 643.  "Thus, to tie [his injuries] to his working conditions at the Railroad, [Mr. Lewis] needs expert testimony."  Id.

And "federal case law is clear that summary judgment must be entered when the evidence of specific medical causation is inadmissible."  Def.'s Mem., d/e 24, at 14 (citing, e.g., Meyers v. Nat'l R.R. Passenger Corp. (Amtrak), 619 F.3d 729, 735 (7th Cir. 2010)).  But the inverse is true here: Mr. Lewis can offer admissible expert evidence of specific causation.  That is enough for Mr. Lewis's claims to survive summary judgment.  Illinois Central's motion for summary judgment on causation is denied.

**F. Illinois Central's Motion for Partial Summary Judgment on Ballast is Denied.**

This leaves Illinois Central's third and final summary judgment motion, which concerns the role played by ballast in the underlying events.  As the parties agree, ballast refers to rocks of varying size "used as the roadbed to keep the railroad ties and rails in place and for draining."  Pl.'s Resp., d/e 39-1, at ¶ 4.  Mr. Lewis alleges that his injuries stem in part from "walking on uneven terrain and road ballast" in Illinois Central's railyards.  Compl., d/e 1, at ¶ 5.  He also alleges that the Railroad "failed to maintain and/or adequately maintain the tracks, ballast, walkways[,] and walking and working conditions . . . in a reasonably safe condition."

Id. ¶ 8.  Illinois Central offers several reasons why it is entitled to summary judgment on Mr. Lewis's "ballast-related negligence claims."  See Def.'s Mot. Summ. J., d/e 25, at 1–2.

Illinois Central's primary contention is that any negligence claim related to ballast is necessarily precluded by the Federal Railroad Safety Act (FRSA), 49 U.S.C. §§ 20101 et seq.  In the Railroad's telling, "FRSA ballast regulations 'cover the subject matter' of ballast and ballast size and displace any federal common-law standards or other federal agency safety rules that purport to cover the same subject matter," and in so doing preclude "the ballast-related negligence claims in Plaintiff's Complaint."  Def.'s Mem., d/e 26-2, at 1–2.  This argument has been considered and rejected by courts in this Circuit and across the country.  See, e.g., Quiroz v. CSX Transp., No. 2:20-CV-69, 2022 WL 4594070, at *2–3 (N.D. Ind. Aug. 24, 2022); Jones v. BNSF Ry. Co., 306 F. Supp. 3d 1060 (C.D. Ill. 2017); Lombardy v. Norfolk Southern Ry. Co., 2014 WL 2468612, at *1 (N.D. Ind. June 3, 2014); Grogg v. CSX Transp., Inc., 659 F. Supp. 2d 998 (N.D. Ind. Sept. 14, 2009); Wilcox v. CSX Trans., Inc., 2007 WL 1576708, at *1 (N.D. Ind. May 30, 2007);

Grimes v. Norfolk Southern Ry. Co., 116 F. Supp. 2d 995 (N.D. Ind. Sept. 18, 2000).  This Court now joins them.

Congress devised the FRSA to "promote safety in every area of railroad operations and reduce railroad-related accidents and incidents."  49 U.S.C. § 20101.  Under the FRSA, "[l]aws, regulations, and orders related to railroad safety" must be "nationally uniform to the extent practicable."  Id. § 20106(a)(1). Illinois Central contends that Congress's express intention of pursuing "national uniformity" implicitly precludes any FELA claim that reaches a subject of an FRSA regulation.  Yet Congress, as the Supreme Court has recognized, "not infrequently permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important."  POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 117 (2014) (citations omitted).  It hardly can be said that the FELA—which regulates railroad safety ex post through a private cause of action— and the FRSA—which regulates railroad safety ex ante through agency rulemaking—are anything but complementary.  See, e.g., Madden v. Anton Antonov & AV Transp., Inc., 156 F. Supp. 3d 1011, 1019–21 (D. Neb. 2015); Infermo v. New Jersey Transit Rail

Operations, Inc., No. 10–2498, 2012 WL 209359, at *6 (D.N.J. Jan. 24, 2012) ("[T]he language of FRSA itself gives no indication that the express preemption clause crafted to address potentially varying and disparate state laws concerning standards for the operation and maintenance of the national rail system should, by implication, extend to subsume matters governed by FELA, which is concerned primarily with providing injured railroad employees a deliberately attainable remedy."); cf. Sprietsma v. Mercury Marine, 537 U.S. 51, 56, 70 (2002) (holding that the Federal Boat Safety Act's "policy of encouraging uniformity of boating laws insofar as practicable" did not "justify the displacement of . . . common-law remedies that compensate accident victims and their families and that serve the Act's more prominent objective, emphasized by its title, of promoting boating safety").

This Court "will not act where Congress has not." Madden, 156 F. Supp. 3d at 1021. "When two statutes complement each other," and when Congress has not spoken to either statute's preclusive or preemptive effect, "it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." POM

<u>Wonderful</u>, 573 U.S. at 115.  That is why "the courts in this district
have been abundantly clear that FELA negligence claims involving
ballasts are not preempted by the FRSA."  <u>Quiroz</u>, 2022 WL
4594070, at *3 (collecting cases).  The Court declines Illinois
Central's invitation to hold otherwise.

Next, Illinois Central argues that it is entitled to summary
judgment on Mr. Lewis's claim that the Railroad violated "49 C.F.R.
§ 213 or any other federal regulation regarding ballast."  <u>See</u> Def.'s
Reply, d/e 49-2, at 2.  In relevant part, 49 C.F.R. § 213.103
provides:

> § 213.103 Ballast; general.
>
> Unless it is otherwise structurally supported, all
> track shall be supported by a material which
> will—
>
> (a) Transmit and distribute the load of the track
>     and railroad rolling equipment to the
>     subgrade;
>
> (b) Restrain the track laterally, longitudinally,
>     and vertically under dynamic loads imposed
>     by railroad rolling equipment and thermal
>     stress exerted by the rails;
>
> (c) Provide adequate drainage for the track; and
>
> (d) Maintain proper track crosslevel, surface,
>     and alignment.

49 C.F.R. § 213.103 (2022).  Illinois Central contends that Mr.
Lewis "has provided no admissible evidence" that the Railroad
deviated from this federal standard or any other.  Def.'s Mem., d/e
26-2, at 5.  However, this argument elides the existence and
admission of Dr. Kress's contrary expert testimony, which suffices
to create a genuine dispute of material fact under the FELA.  <u>See</u>
Pl.'s Resp., d/e 39-1, at 23; <u>see generally</u> <u>Harbin</u>, 921 F.2d at 131
(court "must submit an [FELA] case to the jury when there is even
slight evidence of negligence").  Illinois Central's motion for partial
summary judgment is denied.

**G. Mr. Lewis's Motion for Inspection is Granted.**

The last of the parties' pending motions is Mr. Lewis's motion
for inspection.  Pl.'s Mot., d/e 32.  During the expert deposition of
Brian Weaver, Illinois Central's ergonomics expert, Mr. Lewis's
attorney asked Illinois Central's counsel to allow him to inspect the
four railyards at issue and collect small samples of the ballast used
there.  Illinois Central's counsel advised that the parties could
discuss the question afterward.  During a telephone conference held

on August 15, 2022—the parties' last day to conduct discovery—
Illinois Central's counsel orally denied that request.

Mr. Lewis now moves the Court to order Illinois Central to
allow the inspection.  Illinois Central opposes the motion, arguing
that Mr. Lewis failed to make his request in writing, failed to file "a
proper Rule 37 motion to compel with the required certifications,"
and in any event seeks evidence that "Plaintiff's own expert deemed
. . . irrelevant."  Def.'s Resp., d/e 33, at 3, 8–9.

Under Federal Rule of Civil Procedure 34(a)(2), a party may
request that another party "permit entry onto designated land or
other property possessed or controlled by the responding party, so
that the requesting party may inspect, measure, survey,
photograph, test, or sample the property or any designated object or
operation on it."  Fed. R. Civ. P. 34(a)(2).  A Rule 34(a)(2) request is
subject to the limitations of Rule 26, which requires that the Court
limit discovery when "the burden or expense of the proposed
discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C).
"District courts have broad discretion" in making such a
determination.  Patterson v. Avery Dennison Corp., 281 F.3d 676,
681 (7th Cir. 2002) (citing Packman v. Chicago Trib. Co., 267 F.3d

628, 646–47 (7th Cir. 2001)).  The Court enjoys equally broad discretion "to deny a discovery motion filed after the discovery deadline in the case has passed, especially where the moving party has failed to establish good cause for the late filing."  Assaf v. OSF Healthcare Sys., No. 4:11-CV-04108, 2014 WL 3865891, at *1 (C.D. Ill. Aug. 6, 2014) (citations omitted).

The Court finds that Illinois Central lacked good cause to deny Mr. Lewis's request.  The actual size and scale of the ballast at issue plainly are relevant to Mr. Lewis's claims.  And allowing Mr. Lewis to photograph and collect samples of rock imposes on Illinois Central only a minimal "burden or expense."  See Fed. R. Civ. P. 26(b)(2)(C).  Moreover, Illinois Central met Mr. Lewis's informal discovery request with equal informality.  If the Railroad "had objections to the informality of the requests, it should have voiced those concerns immediately and insisted on formal requests.  But it did not, so the [C]ourt deems [Illinois Central's] objection to the form of the requests to be waived."  Boehm v. Scheels All Sports, Inc., No. 15-CV-379-JDP, 2016 WL 6811559, at *2 (W.D. Wis. Nov. 17, 2016).  Mr. Lewis's motion for inspection is granted.

# V. CONCLUSION

For these reasons, Defendant's Motion for Partial Summary Judgment on Statute of Limitations (d/e 21), Motion for Summary Judgment on Causation (d/e 23), Motion for Partial Summary Judgment on Ballast (d/e 25), Motion to Bar Expert Testimony of Tyler Kress (d/e 27), and Motion to Bar Expert Testimony of Sarah Spizzirri (d/e 29) are DENIED.  Plaintiff's Motion to Bar the Affidavit of William Barbre (d/e 31) and Motion for Inspection (d/e 32) are GRANTED.

**IT IS FURTHER ORDERED THAT:**

1.  A status conference is hereby SET for September 7, 2023, at 2:30 p.m.  Counsel for both parties shall participate by videoconference, the instructions for which are attached. Counsel should be prepared to (1) discuss the terms of Mr. Lewis's inspection and (2) propose new trial dates.

**IT IS SO ORDERED.**

**ENTERED:  AUGUST 16, 2023**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**